NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL R. RAY, : : Plaintiff, : : v. : : GARY MERLINE, et al., : : Defendants. : : | Civil Action No. 06-3026 (RBK) **O P I N I O N** |

**APPEARANCES:**

    MICHAEL R. RAY, #40860-019, Plaintiff Pro Se
    F.C.I. Estill
    P.O. Box 699
    Estill, South Carolina  29918-0699

**KUGLER**, District Judge

    Plaintiff Michael R. Ray, a federal prisoner who is presently incarcerated at the Federal Correctional Institution at Estill in South Carolina, seeks to file a Complaint and Supplemental Complaint alleging violation of his constitutional rights, pursuant to 42 U.S.C. § 1983, arising from his detention at the Atlantic County Justice Facility ("ACJF") in Atlantic City, New Jersey. Having thoroughly reviewed Plaintiff's allegations and his application to proceed in forma pauperis, the Court will grant prisoner in forma pauperis status pursuant to 28 U.S.C. § 1915, dismiss ACJF as Defendant, and allow the Complaint, as supplemented, to proceed in part against the remaining Defendants. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1).

## I.  BACKGROUND

Plaintiff sues the ACJF; the County of Atlantic, New Jersey;  ACJF Warden Gary Merline; and mail delivery officials Barbara Borisch and Jane Doe.  Plaintiff asserts the following facts, which will be regarded as true for the purposes of this review.  On April 25, 2006, while Plaintiff was incarcerated as a federally-sentenced inmate at FCI Estill, he was transferred to the ACJF to face criminal charges brought against him by the State of New Jersey.  Plaintiff was incarcerated at ACJF from approximately April 25, 2006, until sometime in September 2006, when he was taken back to FCI Estill.  Plaintiff complains that Defendants violated his rights under the Interstate Agreement on Detainers Act by charging him a $50.00 user fee and a $10.00 charge for each medical/dental visit.  Plaintiff further maintains that Defendants violated his rights under the First Amendment by denying him access to "USA Today," a magazine, and the "Myrtle Beach Sun News," a newspaper, even though sentenced inmates were permitted to receive newspapers, books and magazines by mail.  Plaintiff alleges that Defendants had no legitimate penological interest in not allowing him to receive  newspapers and magazines by mail.  Plaintiff also asserts that Defendants violated his First Amendment right of access to courts by restricting his legal research to 50 pages per week, failing to provide a law library, and limiting his possession of stamped envelopes to 10 at a time.  In his Supplemental Complaint, Plaintiff asserts that Defendants unconstitutionally opened his incoming legal mail outside his presence.  Finally, Plaintiff complains that ACJF provided him inadequate living, sleeping and eating space by housing 65 to 71 inmates in an area designed to accommodate 16 inmates.  Plaintiff asserts that there were not enough toilets or showers, bacteria and staph infections were rampant, and there was inadequate ventilation.  Plaintiff states that he submitted

several grievances regarding these matters to Warden Merline, but he received no response. Plaintiff seeks damages and injunctive relief for violation of his constitutional rights.

## II.  LEGAL STANDARD FOR SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court, prior to docketing or as soon as practicable after docketing, to review a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner seeks redress against a governmental employee or entity.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.  The PLRA requires the Court to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  Id.

"A document filed pro se is to be liberally construed, and a  pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, __ U.S. __, __, 127 S. Ct. 2197, 2200 (2007) (citations and internal quotation marks omitted); see also Haines v. Kerner, 404 U.S. 519, 520 (1972).  "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Erickson, 127 S. Ct. at 2200 (citations and internal quotation marks omitted).

A claim is frivolous if it "lacks even an arguable basis in law" or its factual allegations describe "fantastic or delusional scenarios."  Neitzke v. Williams, 490 U.S. 319, 328 (1989); see also Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990).  "Given the Federal Rules' simplified

standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)); see also Thomas v. Independence Tp., 463 F.3d 285, 296-97 (3d Cir. 2006); Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004).  However, a court should not dismiss a complaint with prejudice for failure to state a claim without providing leave to amend, unless it finds bad faith, undue delay, prejudice or futility.  See Grayson v. Mayview State Hosp., 293 F. 3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F. 3d 113, 117 (3d Cir. 2000).

### III.  DISCUSSION

Federal courts are courts of limited jurisdiction.  See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884).  "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."  Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986).  A district court may exercise jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority."  U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal constitutional rights by a person who was acting under color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory . . . subjects,
> or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and

>laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970).

A.  Interstate Agreement on Detainers Act

Plaintiff asserts that Defendants violated the Interstate Agreement on Detainers Act by charging him a $50.00 user fee and a $10.00 fee for each medical/dental visit. The Interstate Agreement on Detainers ("IADA"), 18 U.S.C. app. 2 § 2; N.J. Stat. Ann. § 2A:159A-1 et seq., is a congressionally sanctioned interstate compact within Art. I, § 10, of the United States Constitution, and is thus a federal law within the meaning of 28 U.S.C. § 1983. See Carchman v. Nash, 473 U.S. 716, 719 (1985); Cuyler v. Adams, 449 U.S. 433, 438-42 (1981); Casper v. Ryan, 822 F.2d 1283, 1288 (3d Cir. 1987), cert. denied, 484 U.S. 1012 (1988). The IADA was adopted by the United States and the State of New Jersey. See 18 U.S.C. app. 2 § 1, historical notes; Carchman, 473 U.S. at 719; United States v. Mauro, 436 U.S. 340 (1978). The purpose of the IADA is "to encourage the expeditious and orderly disposition of [outstanding criminal] charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints." 18 U.S.C. app. 2 § 2, art. I. To achieve this end, the IADA establishes two procedures by which a prisoner against whom a detainer has been lodged may be transferred to the temporary custody of the receiving state. See Cuyler, 449 U.S. at 443. As

5

Plaintiff contends, Article V(h) of the IADA requires the receiving state to pay all costs of caring for and keeping the prisoner while he or she is in the custody of the receiving state. See 18 U.S.C. app. 2 § 2, art. V(h). Specifically, that paragraph provides:

> (h) From the time that a party State receives custody of a prisoner pursuant to this agreement until such prisoner is returned to the territory and custody of the sending State, the State in which the one or more untried indictments, informations, or complaints are pending or in which trial is being had shall be responsible for the prisoner and shall also pay all costs of transporting, caring for, keeping, and returning the prisoner. The provisions of this paragraph shall govern unless the States concerned shall have entered into a supplementary agreement providing for a different allocation of costs and responsibilities as between or among themselves. Nothing herein contained shall be construed to alter or affect any internal relationship among the departments, agencies, and officers of and in the government of a party State, or between a party State and its subdivisions, as to the payment of costs, or responsibilities therefor.

18 U.S.C. app. 2 § 2, art. V(h); N.J. Stat. Ann. § 2A:159A-5, art. V(h).

In Cuyler, 449 U.S. at 450, the Supreme Court held that violation of the terms of the IADA by state officials "state[s] a claim for relief under 42 U.S.C. § 1983." Id.; accord Shack v. Attorney General of the State of Pennsylvania, 776 F. 2d 1170, 1173-74 (3d Cir. 1985); Bush v. Muncy, 659 F. 2d 402, 413-14 (4th Cir. 1981). Accordingly, this Court finds that sua sponte dismissal of Plaintiff's claim that Defendants violated Article V(h) of the IADA and 42 U.S.C. § 1983 by charging him user and medical fees is not warranted and will allow this claim to proceed past the sua sponte dismissal stage.[1]

---

[1] However, the Atlantic County Justice Facility will be dismissed as defendant because a jail is not an entity subject to suit under § 1983. See Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993); McCoy v. Chesapeake Correctional Center, 788 F. Supp. 890, 893-894 (E.D. Va. 1992).

B.  First Amendment

Plaintiff asserts that Defendants violated his rights under the First Amendment, applicable to states through the Fourteenth Amendment, by not allowing him to receive magazines and newspapers through the mail, restricting his ability to conduct legal research, limiting his possession of stamped envelopes to 10 at a time, and opening his incoming legal mail outside his presence.  The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  Although "prisoners do not forfeit all constitutional protections," it is settled that "[t]he fact of confinement as well as the legitimate goals and policies of the penal institution limit these retained constitutional rights."  Bell v. Wolfish, 441 U.S. 520, 545, 546 (1979); see also Overton v. Bazzetta, 539 U.S. 126, 132 (2003).  Moreover, the Supreme Court has chosen the most deferential standard of review for cases challenging prison regulations as violative of the Constitution.  Under that standard, "restrictive prison regulations are permissible if they are 'reasonably related to legitimate penological interests,' and are not an 'exaggerated response' to such objectives."  Beard v. Banks, 126 S. Ct. 2572, 2578 (2006) (quoting Turner v. Safley, 482 U.S. 78, 87 (1987)).

Plaintiff asserts that Defendants violated his First Amendment rights by denying him access to newspapers and magazines.  The Supreme Court recently determined that a Pennsylvania prison policy that denied newspapers, magazines, and photographs to a group of specially dangerous and recalcitrant inmates did not violate the First Amendment.  See Beard v. Banks, 126 S. Ct. 2572 (2006).  The case arose in the context of the defendants' motion for summary judgment, which "set forth several justifications for the prison's policy, including the need to motivate better behavior on the part of particularly difficult prisoners."  Id. at 2578.

Noting that "prison officials have imposed the deprivation at issue only upon . . . the 40 most intractable inmates in the Commonwealth [and] reached an experience-based conclusion that the polic[y] help[s] to further legitimate prison objectives," id. at 2580, the Supreme Court found that, on the basis of the record before the District Court, summary judgment in favor of the government was warranted.  Id. at 2581.

Unlike the procedural posture in Beard, this Court is analyzing whether sua sponte dismissal of Plaintiff's First Amendment claims is warranted.  This Court finds that, given the absence of a record showing the legitimate penological interests served by the alleged denial of access to newspapers and magazines, sua sponte dismissal is not warranted.  See  Wolf v. Ashcroft, 297 F.3d 305 (3d Cir. 2002) (reversing and remanding dismissal of prisoner's challenge to rule prohibiting R rated movies because the connection between the policy and the government interest was not obvious); Dreibelbis v. Marks, 675 F. 2d 579 (3d Cir. 1982) (reversing sua sponte dismissal of First Amendment claim because at the very least a record must be made as to the state's justifications).  This Court will accordingly allow this First Amendment claim to proceed to service.

Plaintiff also asserts that Defendants violated his First Amendment right of access to courts by restricting his legal research and limiting his possession of stamped envelopes to 10 at a time.  Specifically, he asserts:

> The facility has no inmate law library.  They claim to provide
> access to legal materials through a request system by Westlaw.
> The requests are limited to 50 pages/week.  I have had several
> requests summarily denied and returned marked "pending info
> packet" ???  Other inmates are allowed to receive numerous
> requests.  Access to legal materials - other than those pertaining to
> ones legal case is restricted.  This is a denial of access to legal

8

>   materials and to the courts - in violation of the U.S. Constitution.
>   The first 50 pages are provided and the rest of the case is never
>   received. See (Exhibit C & D p. 7.)
>   . . .
>   Facility limits possession of stamped envelopes to "10" at any one
>   time. Petitioner/Plaintiff has several pending legal cases and one
>   in particular involves 13 . . . counsel. One mailing may require 15
>   envelopes at a time. Access to courts are being denied by limiting
>   correspondence materials.

(Compl. ¶¶ 6.c & 6.e.)

The Supreme Court held in Lewis v. Casey, 518 U.S. 343 (1996), that a prisoner lacks standing to pursue an access to courts claim unless he shows that the alleged interference of prison officials, or shortcomings in the library or legal assistance program, "hindered his efforts to pursue a legal claim." Lewis, 518 U.S. at 352. To satisfy this standard, an inmate must show that a pending or contemplated legal proceeding was prejudiced or harmed in some way by the alleged interference or shortcomings. Id. at 351. In Lewis, the Supreme Court gave examples of potential actual injuries:

>   He might show, for example, that a complaint he prepared was
>   dismissed for failure to satisfy some technical requirement which,
>   because of deficiencies in the prison's legal assistance facilities, he
>   could not have known. Or that he had suffered arguably actionable
>   harm that he wished to bring before the courts, but was so stymied
>   by inadequacies of the law library that he was unable even to file a
>   complaint.

Lewis, 518 U.S. at 351.

In Oliver v. Fauver, 118 F.3d 175, 178 (3d Cir. 1997), the plaintiff prisoner alleged that corrections officers had opened his outgoing legal mail (containing a notice of appeal and a brief) to the Clerk of the New Jersey Superior Court, the state Attorney General, and the Commissioner of the Department of Corrections. Id. at 176. The United States Court of Appeals for the Third

Circuit rejected the claim because the prisoner suffered no actual injury as a result of the alleged interference with his outgoing legal mail, where his papers arrived at the court, which adjudicated his claim. Id. at 178.

Here, Plaintiff challenges the restrictions on legal research and limitation on stamped envelopes, but Plaintiff does not assert that he suffered an actual injury as a result of these policies, such as the dismissal of a case or appeal. Since nothing alleged in Plaintiff's Complaint supports an inference that the challenged policies caused actual injury to a particular claim or case, Plaintiff lacks standing to pursue an access to courts claim. See Lewis, 518 U.S. at 349 ("The requirement that an inmate alleging [an access to courts claim] must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches"). The Court will therefore dismiss the access to courts claim for failure to state a claim upon which relief may be granted.

However, the facts alleged regarding the access to courts claim do not foreclose the possibility that Plaintiff suffered an actual injury, and Plaintiff may be able to state a cognizable claim by filing an amended complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002) (unless amendment would be futile, district court may not dismiss complaint without permitting amendment). The dismissal of the access to courts claim will therefore be without prejudice to the filing of an amended complaint.[2]

In the Supplemental Complaint, Plaintiff asserts that since August 1, 2006, ACJF officials opened his properly identified incoming legal mail outside his presence. In Jones v. Brown, 461

---

[2] A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served. See Fed. R. Civ. P. 15(a). Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party. Id.

F. 3d 353 (3d Cir. 2006), the United States Court of Appeals for the Third Circuit held that New Jersey's policy of opening properly marked incoming legal mail outside an inmate's presence infringes First Amendment communication. Id. at 358-59. In light of Jones, this Court finds that sua sponte dismissal of this claim is not warranted.

C. Conditions of Confinement

Plaintiff asserts that the overcrowded and unsanitary conditions of confinement at ACJF violated his constitutional rights. To establish a conditions of confinement claim, an inmate must first show that the alleged deprivations are sufficiently serious. See Farmer v. Brennan, 511 U.S. 825, 834 (1984). Conditions are sufficiently serious when they (1) involve the wanton and unnecessary infliction of pain, or (2) deny the inmate one identifiable basic human need, or (3) deprive a prisoner of the minimal civilized measure of life's necessities. See Wilson v. Seiter, 501 U.S. 294, 305 (1991); Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Several deprivations in combination may satisfy the objective component "when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need, such as food, warmth, or exercise." Wilson 501 U.S. at 304. Protected human needs also include reasonable safety, habitable shelter, and essential sanitation. See Id. at 304-05; Rhodes, 452 U.S. at 348; Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996); Young v. Quinlan, 960 F.2d 351, 365 (3d Cir. 1992). To state a claim, an inmate must also show that prison officials were deliberately indifferent to his safety or health. A prison official is deliberately indifferent when he or she "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Farmer, 511 U.S. at 847; Nami, 82 F.3d at 67-68.

11

In this Complaint, Plaintiff alleges that officials housed 65 to 71 inmates on a unit designed to house 16 inmates, there were not enough toilets or showers, adequate ventilation was lacking, and bacteria and staph infections were rampant.  Plaintiff asserts that he submitted several administrative remedies to Warden Merline but received no response.  The denial of "basic sanitation . . . is 'cruel and unusual because, in the worst case, it can result in physical torture, and, even in less serious cases, it can result in pain without any penological purpose.'"  Young v. Quinlan, 960 F.2d 351, 365 (3d Cir. 1992) (quoting Estelle v. Gamble, 429 U.S. 97, 103 (1976)); see also Hutto v. Finney, 437 U.S. 678, 682-83 (1978)  (indeterminate isolation in overcrowded cell where prisoners were given dirty mattresses and the toilet could not be flushed from inside the cell); Myers v. Hundley, 101 F.3d 542, 544 (8th Cir. 1996) (repeated deprivation of adequate personal hygiene supplies violates Eighth Amendment); Keenan v. Hall, 83 F.3d 1083, 1090-91 (9th Cir. 1996) (allegations that air was saturated with fumes of feces, urine, and vomit and denial of personal hygiene products sufficiently serious).  Given Plaintiff's allegations that these conditions persisted for several months and that he complained to the Warden, this Court finds that sua sponte dismissal of the conditions of confinement claim is not warranted.[3]

---

[3] However, Plaintiff is not entitled to injunctive relief  directing Defendants to remedy conditions at the jail because he is no longer incarcerated there.  Hassine v. Jeffes, 846 F.2d 169, 175-76 & n.3 (3d Cir. 1988); Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981).

## IV.  CONCLUSION

The Court will grant Plaintiff's application to proceed in forma pauperis, dismiss the Atlantic County Justice Facility as Defendant, dismiss the access to courts claim without prejudice, and allow the remaining federal claims to proceed to service.

                                       s/Robert B. Kugler                        
                                       **ROBERT B. KUGLER, U.S.D.J.**


Dated:     July 18    , 2007